UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| EBC ASSET INVESTMENT, INC., <br> a Virginia corporation, <br><br> Plaintiff, <br><br> v. <br><br> SULLIVAN AUCTIONEERS, LLC., <br> an Illinois limited liability company, <br><br> Defendant. | Case No. 13-1378 |

## ORDER

This matter is now before the Court on the Report and Recommendation (ECF No. 21) issued by Magistrate Judge Byron G. Cudmore regarding Plaintiff's Motion to Strike Defendant's Affirmative Defenses Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 14). For the reasons stated below, the Report and Recommendation (ECF No. 21) is ADOPTED, and Plaintiff's Motion to Strike Defendant's Affirmative Defenses Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 14) is GRANTED IN PART and DENIED IN PART.

## JURISDICTION

Under 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs" and is between "citizens of different states." The parties in this action meet the diversity of citizenship requirement because EBC Asset Investment, Inc. ("Plaintiff") is a Virginia corporation with its principal place of business located in Dulles, Virginia. Sullivan Auctioneers, LLC ("Defendant") is an Illinois limited liability company with its principal place of business located in Hamilton, Illinois. Defendant has three members: Daniel Sullivan, who resides in Hamilton, Illinois; James Sullivan, who resides in Hamilton, Illinois; and Joseph Sullivan, who

1

resides in Rushville, Illinois. The amount in controversy was a matter of dispute, but this Court held that Plaintiff met the amount in controversy requirement when it denied Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Venue is proper under 28 U.S.C. § 1391 because Defendant resides in Hancock County, Illinois and a substantial part of the events or omissions that are the subject of the Complaint occurred in Hancock County, Illinois.

## BACKGROUND

On June 4, 2007, Scott Hoerr and his wife, Anna Hoerr, granted to Corn Belt Bank & Trust Company ("Corn Belt") a security interest in all of the Hoerrs' "Inventory, Chattel Paper, Accounts, Equipment, General Intangibles, Crops, Farm Products, Livestock (including all increase supplies) and Farm Equipment." Complaint, Exhibit A, Agricultural Security Agreement ("Security Agreement"), at 1. The grant of a security interest included all such property "now owned or hereafter acquired." *Id.* At the time, the Hoerrs were indebted to Corn Belt on two promissory notes in the original principal amounts of $450,000 and $270,000. The $450,000 note was renewed and replaced by another $450,000 note dated July 18, 2008. Complaint, Exhibits C and D, Promissory Notes ("Notes"). The Notes were part of an ongoing business relationship with the Hoerrs and Corn Belt. Corn Belt had previously filed a financing statement perfecting its security interests in the Hoerrs' collateral on July 21, 2004.

On February 13, 2009, the Federal Deposit Insurance Corporation ("FDIC") closed Corn Belt. The FDIC, as receiver for Corn Belt, maintained the perfection of Corn Belt's security interest in the Hoerrs' collateral by filing a continuation of Corn Belt's financing statement with the Illinois Secretary of State on June 30, 2009. Complaint, Group Exhibit B, Financing Statements.

Plaintiff alleges that FDIC sold the Notes and assigned the security agreements to Plaintiff. The documents attached to the Complaint show that FDIC sold the Notes and assigned the security interests to CIRAS, LLC, effective August 6, 2009; and CIRAS, LLC, sold the Notes and assigned the security interest to Plaintiff effective August 25, 2009. Complaint, Exhibits C, D, and E Promissory Notes, Allonges and Assignments of Security Agreements. On June 20, 2011, financing statements were filed with the Illinois Secretary of State showing the assignments of security interests from FDIC to CIRAS, LLC, and then to Plaintiff. Complaint, Group Exhibit B, Financing Statements.

In the spring of 2010, the Hoerrs decided to end their farming operation. Scott Hoerr contacted Defendant to conduct an auction of the Hoerrs' farming equipment. The auction occurred on June 22, 2010. Neither the Hoerrs nor Defendant notified Plaintiff of the auction. Defendant conducted an auction at its place of business in Hamilton, Illinois.

Upon information and belief, Plaintiff alleges that the sale proceeds totaled $820,545. Plaintiff alleges that the proceeds were subject to its security interest. Defendant distributed the proceeds to John Deere Credit, Scott Hoerr, and itself. Plaintiff alleges that it demanded payment of the proceeds from the sale, but Defendant refused the demand.

Plaintiff filed this action on August 13, 2013, and seeks judgment against Defendant for a portion of the sale proceeds.

## STANDARD OF REVIEW

The Court may strike an insufficient defense from a pleading. Fed. R. Civ. P. 12(f); *see Jackson v. Methodist Med. Ctr. of Ill.*, 207 WL 128001, at \*1 (C.D. Ill. Jan. 11, 2007). Motions to strike, however, are generally disfavored because they are often used only to delay proceedings. *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989).

"The Court is particularly reluctant to strike affirmative defenses because the assertion of an affirmative defense does not prejudice the plaintiff. A plaintiff is not required to file a responsive pleading and is deemed to have denied all allegations in any affirmative defense. Fed. R. Civ. P. 7(a) and 8(b)(6)." *Fralick v. Cnty. of Dewitt*, 2011 WL 5509226, at *1 (C.D. Ill. Nov. 10, 2011).

## DISCUSSION

The Court addresses each defense separately. The Court refers to each defense by the paragraph number in the Answer.

<u>Affirmative Defense Paragraph 22</u>

Paragraph 22 alleges the following affirmative defense:

22. The Plaintiff's action is a claim for conversion of the cash proceeds from the auction and is based upon its alleged secured interest (as evident by the negotiable instruments filed herein by the Plaintiff) in the Hoerr farm equipment sold at auction by the Defendant, and accordingly is barred by the 3-year statute of limitations under Article 3 of the Uniform Commercial Code, specifically § 3-118(g), which provides:

> "(g) Unless governed by other law regarding claims for indemnity or contribution, an action (i) for conversion of an instrument, for money had and received, or like action based on conversion, (ii) for breach of warranty, or (iii) to enforce an obligation, duty, or right arising under this Article and not governed by this Section must be commenced within 3 years after the cause of action accrues."

In this case, the Plaintiff contends that its cause of action for conversion accrued on June 22, 2010 (See ECF No. 5); however the Defendant filed its Complaint herein on August 23, 2013 (See ECF No. 1).

Thus, Defendant alleges that Plaintiff's claim is barred by the statute of limitations. This Court finds that Defendant is incorrect as a matter of law. Plaintiff's claim is not barred by the statute of limitations. Defendant raised this same argument regarding the three-year statute of limitations in § 3-118(g), 810 ILCS 5/3-118(g), in its Motion for Judgment on the Pleadings

(ECF No. 17). This Court followed the Report and Recommendation issued by Judge Cudmore and denied Defendant's Motion for Judgment on the Pleadings. Report and Recommendation entered January 30, 2014 (ECF No. 20). As explained in that Report and Recommendation, the applicable statute of limitations is the five-year statute set forth in 735 ILCS 5/13-205; § 3-118(g) does not apply. The Court finds that the defense in Paragraph 22 is legally insufficient and should be stricken.

Affirmative Defense Paragraph 23

Paragraph 23 alleges the following affirmative defense:

23. The Auction License Act of the State of Illinois, 225 ILCS 407/5-1 et seq. ("the Act"), became effective on January 1, 2000 and it regulates and sets forth the business practices standards of auctioneers. The[re] is no prescribed duty under the Act for an auctioneer on his own accord to determine whether the property proposed to be sold at an auction is encumbered by a third party. The Act puts that burden on the seller, not the auctioneer. Specifically, § 15-10(2) of the Act provides that "the seller shall disclose" to the auctioneer, as part of the auction contract, "any mortgage, lien, easement, or encumbrance of which the seller has knowledge on any property or goods to be sold or leased at or by auction." In the case at hand, the seller, Scott Hoerr, disclosed to the Defendant that the John Deere Credit Corporation was the only secured creditor of Mr. Hoerr's farm equipment. The basis for the Plaintiff's conversion claim is *Hills Bank and Trust Company v. Arnold Cattle Company*, 316 N.E.2d 669 (3rd Dist. 1974); however, this case predates the Act and the Act is the controlling law. Thus, the Defendant's claim is void under the law.

In Paragraph 23, Defendant alleges that § 15-10(2) of the Illinois Auction License Act, 225 ILCS 407/5-1 et seq. ("the Act"), absolves it of any liability to a secured creditor in a common law claim for conversion. In Defendant's Objection, In Part, to Report and Recommendation of U.S. Magistrate Judge Byron G. Cudmore Entered January 30, 2014 (ECF No. 22), Defendant states that Article 15 of the Act sets forth the "business practice provisions" relative to an auction in Illinois. Section 15-10 thereof prescribes the duty on the auctioneer to

5

enter into a written auction contract with the seller of the property to be auctioned. (ECF No. 22 at 2). The seller must disclose "any mortgage, lien, easement, or encumbrance of which seller has knowledge on any property or goods to be sold or leased by auction." (ECF No. 22 at 2). Defendant argues that an auctioneer impliedly can rely on such disclosures by the seller because the Act does not set forth any further regulation requiring the auctioneer to go beyond the seller's disclosure and make an independent search to determine the title of the goods proposed to be sold at auction. (ECF No. 22 at 2-3). Defendant alleges that Scott Hoerr made a written disclosure to Defendant that the only creditor that had an interest in his farm equipment was John Deere Credit. (ECF No. 22 at 3). Based on this disclosure, Defendant contacted John Deere Credit and paid John Deere $741,743.20 from the auction proceeds. (ECF No. 22 at 3).

This question of whether an auctioneer can be liable for conversion is a case of first impression in the U.S. District Court for the Central District of Illinois. The weight of authority on this issue holds that an auctioneer who sells property on behalf of a principal who has no title or who holds the property subject to a mortgage or other lien is personally liable to the true owner or mortgagee for conversion regardless of whether he had knowledge, actual or constructive, of the principal's lack of title or want of authority to sell. *See* 96 A.L.R.2d 208. While not binding on this Court, but certainly persuasive, Third District of the Illinois Appellate Court held in *Hills Bank & Trust Co. v. Arnold Cattle Co.*, 22 Ill. App. 3d 138, 140-41 (Ill. App. Ct. 1974), that an auctioneer who conducts an auction without the consent of a secured party may be liable to the secured party for conversion of the secured party's interest in the collateral. *See Hills Bank & Trust Co. v. Arnold Cattle Co.*, 22 Ill. App. 3d 138, 140-41 (Ill. App. Ct. 1974). *Hills Banks & Trust* has been cited with approval in cases from other jurisdictions and in legal

treatises.  *See e.g.,* 96 A.L.R.2d 208 (2014), 68A Am. Jur. 2d *Secured Transactions*, § 682 (2014); 9 Anderson, *Uniform Commercial Code*, § 9-306:19 (3d ed. 2013).

*Hills Bank & Trust Co.* was published prior to the passage of the Illinois Auction License Act.  As Plaintiff notes, the Act was enacted by the General Assembly more than a quarter century following the *Hills Bank & Trust* decision.  When a statute is enacted following a judicial decision, it must be presumed that the legislature acted with knowledge of the governing case law.  *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill.2d 281 (Ill. 2010).  The Illinois Supreme Court has explained when statutes abrogated common law:

> We begin our analysis by noting the following well-settled principles that govern legislative abrogation of a common law rule.  Common law rights and remedies remain in full force in this state unless expressly repealed by the legislature or modified by court decision.  Any legislative intent to abrogate the common law must be plainly and clearly stated, and such intent will not be presumed from ambiguous or questionable language….
>
> The implied repeal of the common law is not and has never been favored.  Thus, a statute that does not expressly abrogate the common law will be deemed to have done so only if that is what is necessarily implied from what is expressed.  But in such cases, there must be an "irreconcilable repugnancy" between the statute and the common law right such that both cannot be carried into effect.

*Rush Univ. Med. Ctr. v. Sessions*, 980 N.E.2d 45, 50-51 (Ill. 2012).

In this case, the Act does not plainly and clearly abrogate common law rights of secured creditors to hold auctioneers liable for conversion.  The purpose of the Act is to license and regulate auctioneers.  225 ILCS 407/5-5.  Section 15-10 sets forth the terms that must be in an auction contract.  Section 15-10(2) requires the seller to disclose secured creditors in the contract.  The Act says nothing about protecting auctioneers from liability to anyone, and specifically says nothing about auctioneers' liability to secured creditors under common law.

7

Section 15-10(2) is also not irreconcilably repugnant to common law rights of secured creditors to seeks remedies for conversion. The section requires the seller to disclose secured creditors. The provision says nothing about auctioneers' common law rights or obligations to third parties. Sellers can comply with this provision, or fail to comply with this provision, without creating some conflict with common law. At most, the provision may give Defendant some additional basis for recourse against the Hoerrs for their failure to disclose. It may also have the effect of providing the auctioneer with an ability to obtain additional information regarding his seller's title beyond that which could be obtained by the auctioneer conducting a simple search of the Illinois Secretary of State's financing statement database. Such a search will reveal the existence of financing statements encumbering the seller's assets. The Act does not compel the conclusion that a secured creditor may not assert a claim for conversion against an auctioneer. Section 15-10(2) and the common law rule found in *Hills Bank & Trust* are not inconsistent and can both be given effect without creating an "irreconcilable repugnancy." This Court finds that the defense set forth in Paragraph 23 is legally insufficient and should be stricken.

Affirmative Defense Paragraph 24

Paragraph 24 alleges the following affirmative defense:

24. The Defendant believes that John Deere Credit Corporation had a purchase money security interest in Mr. Hoerr's John Deere equipment to the extent of $741,743.20; and accordingly, the Defendant contends that the Plaintiff cannot claim that the Defendant illegally converted this amount, nor the pro rata share of the Defendant's sales commission and advertising expenses relative to the John Deere equipment sold at the auction, the sum of which totaled $35,069.73.

Plaintiff argues that this defense is not a true affirmative defense because it does not allege a basis to avoid liability. An affirmative defense generally assumes the complaint is true and asserts some other reason why the defendant is not liable. *Lexington Ins. Co. v. Titan Intern., Inc.*, 2008 WL 687384, at *1 (C.D. Ill. March 11, 2008). Paragraph 24 may not be a true affirmative defense because it does not allege a basis to avoid liability, but only alleges facts that would reduce the amount of damages. Rule 8(c), however, states that a party "must affirmatively state any avoidance or affirmative defense." Fed. R. Civ. P. 8(c)(1). Defendant may have concluded that it was obligated to plead this avoidance of damages under this Rule. Defendant's pleading of this defense also furthers the case by notifying Plaintiff and the Court that Defendant challenges the priority of Plaintiff's secured claim and the effect of that priority. Therefore, the Court finds that the defense should not be stricken on this ground.

Plaintiff also argues that Paragraph 24 fails to plead sufficient facts to state a defense. The same pleading standards apply to affirmative defenses as to other pleadings. Fed. R. Civ. P. 8(a) and (c); *see Local 165 v. DEM/EX Group, Inc.*, 2010 WL 971811, at *2 (C.D. Ill. March 11, 2010). The Court finds that the factual allegations here are sufficient. Defendant specifically alleges that John Deere Credit Corporation's secured claim had a superior priority and also alleges the amount of that claim. Defendant also states the specific amount of its fees and expenses that it alleges are at issue in this defense. These allegations meet the pleading requirements of Rule 8 to put Plaintiff on notice. The affirmative defense in paragraph 24 should not be stricken.

Affirmative Defense Paragraph 25

Paragraph 25 alleges the following affirmative defense:

25. Based on the pleadings and exhibits thereto filed herein to date by the Plaintiff, the Defendant believes that the Defendant may not own or be the holder in due course of the underlying debt and instruments securing the same, or otherwise may not have (sic) legal basis to seek enforcement of its rights under such instruments, because of one or more of the deficiencies that appear on the face of the documents. For instance, but not limited to: 1) security agreement date April 4, 2007, which is the underlying basis for the Defendant's alleged secured interest in the farm equipment sold at auction, doesn't correspond to the UCC financing statement dated July 21, 2004, on which the Plaintiff is relying, while the $450,000 and $270,000 promissory notes each state that, in addition to the security agreement dated April 4, 2007, they are secured by a security agreement dated July 15, 2004, which the Defendant apparently does not hold in due course as it has not been pled or otherwise referenced, but which security agreement dated July 15, 2004, does correspond to the UCC financing statement dated July 21, 2004; and 2) the security agreement dated April 4, 2007, describes non-purchase-money collateral while the UCC financing statement dated July 21, 2004, describes purchase-money collateral.

Plaintiff argues that paragraph 25 fails to meet the pleading standards under Rule 8. The Court agrees. Rule 8 requires a party to make a short, plain statement that puts the opposing party on notice of the claim or defense. Defendant alleges in Paragraph 25 that Plaintiff "may not own or be the holder in due course of the underlying debt and instruments securing the same," or Plaintiff "may not have an (sic) legal basis to seek enforcement of its rights under such instruments." Defendant is effectively alleging that there might be a problem with the documents that might preclude Plaintiff from establishing that it had a valid security interest in the farm equipment. Alleging that a defense might exist is only speculation and is insufficient. Under Rule 8, Plaintiff is entitled to notice of the specific defense or defenses that Defendant asserts; not speculation about possible defenses that Defendant might assert. The Court finds that Paragraph 25 should be stricken for failure to meet the pleading requirements of Rule 8.

Defendant is given leave to replead Paragraph 25 to allege clearly the defense or defenses in accordance with the pleading requirements of Rule 8. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Therefore, Plaintiff's Motion to Strike Defendant's Affirmative Defenses Pursuant to Fed. R. Civ. P. 12(f) (ECF No. 14) are allowed in part and denied in part. The affirmative defenses alleged in Paragraphs 22 and 23 of the Answer are stricken. The affirmative defense in Paragraph 25 of the Answer is stricken with leave to replead. The Motion is otherwise denied.

## CONCLUSION

For the reasons stated above, the Report and Recommendation (ECF No. 21) is ADOPTED, and Plaintiff's Motion to Strike Defendant's Affirmative Defenses Pursuant to Federal Rule of Civil Procedure 12(f) (ECF No. 14) is GRANTED IN PART and DENIED IN PART.

ENTERED this 7th day of March, 2014.

                                                              /s/ Michael M. Mihm
                                                              Michael M. Mihm
                                                              United States District Judge